

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**UNITED STATES OF AMERICA,**

v.

**JACOB KHOBIAN,**

        **Defendant.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**INFORMATION**

Criminal Action No.
10-CR- 532 (GLS)

VIOS: 18 U.S.C. §§ 1341 and 2

Mail Fraud
(1 Count)

## COUNT 1

**THE UNITED STATES ATTORNEY CHARGES:**

### Introduction

At all times relevant hereto:

1. From in or about October 2004, the exact date being unknown, up to in or about December 2009, Defendant JACOB KHOBIAN was a principal of St. Regis Investment Group, LLP ("St. Regis"). In or about 2002, St. Regis, having bid approximately $1.4 million, purchased a paper mill in Middle Falls, New York (the "paper mill"), in the Northern District of New York, through a bankruptcy auction. The paper mill had operated as Stevens & Thompson Paper Company, and, thereafter, was operated as American Tissue Mills of Greenwich.

2. On or about October 26, 2004, Defendant KHOBIAN received a letter from the U.S.

Environmental Protection Agency ("EPA") summarizing the results of a visual inspection of the paper mill by a representative of EPA. The substance of the letter identified two groups of chemicals at, and which needed to be removed from, the paper mill. Group I consisted of chemicals that were in their original sealed containers that could permissibly be returned to their original suppliers. Group II consisted of either opened containers, or containers with unknown contents, that needed to be sampled to determine if the drums contained hazardous wastes. The EPA letter also contained a Field Expedient Notice ("FEN") noting, in substance, that there has been a release, or there may be a release, of hazardous substances, and the need to prevent the release, or future release, from occurring.

    3.    In or about October 2004, Defendant KHOBIAN met in the Northern District of New York with a representative of the EPA to begin the process of removing chemicals, Groups I and II, from the paper mill. To accomplish this, the EPA representative frequently worked at the paper mill and, with the agreement of the Defendant, made arrangements to have known, Group I, chemicals returned to their original suppliers. Group II chemicals, however, needed to be tested and analyzed to determine the appropriate method of disposal. From October 2004 throughout most of 2005, the EPA representative sent to, and received from, Defendant, numerous emails and letters regarding the progress, or lack of progress, of the cleanup effort. In a number of instances, the EPA representative made specific written reference to a "Superfund"¹ site. For example, an EPA letter dated February 2, 2005, memorialized the lack of progress regarding cleanup at the paper mill and cited similar problems at "other Superfund sites." An email to Defendant dated July 22, 2005, was even more

---

¹ "Superfund" is a reference to "EPA Hazardous Substance Superfund" as established by the Internal Revenue Code, 26 U.S.C. § 9507.

2

explicit: "Please note that your mill is a Superfund site, and there are chemicals at the mill which still pose a danger to people entering the mill . . .."

4. In a letter dated August 15, 2005, Defendant stated that he could not afford the cost of completing the cleanup at the paper mill and asked EPA to complete the removal. In an EPA letter to Defendant dated August 23, 2005, EPA sought authorization granting EPA employees access to the paper mill in connection with a "time critical removal action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 . . .." Defendant KHOBIAN signed the access agreement. EPA's efforts to cleanup the paper mill concluded in or about May 2006, at an approximate cost of $340,000.

5. Meanwhile, beginning in the summer of 2004 and throughout 2005, Defendant KHOBIAN and an attorney whose name is known to the grand jury ("Attorney"), made efforts to sell the paper mill. The Attorney had contact with representatives of the EPA as well as prospective buyers in the Northern District of New York. The Attorney acted as the primary agent of Defendant for the sale of the paper mill. On or about June 1, 2005, Defendant and a prospective buyer whose name is known to the grand jury ("Buyer"), and who represented United Fibers, LLC ("United Fibers"), entered into a contract for the purchase and sale of assets and real estate regarding the paper mill. The purchase price was $1.5 million. The contract gave false assurances that, among other things, there was "[n]o litigation or action or proceeding, legal, equitable or administrative, through arbitration or otherwise, [] pending or threatened that might affect the St. Regis Investment Group paper mill . . . of the purchase and sale described in the agreement," when, in fact, EPA's prior notice and ongoing cleanup efforts proved otherwise. Also, in June 2005, the EPA representative advised Attorney that the unknown chemicals could not remain at the paper mill. The EPA representative

3

requested a meeting with Attorney and the prospective purchaser to discuss the nature of the threat the chemicals posed. The meeting did not occur.

6. In or about July 2005, the purchase price was amended to $1 million. Also in July 2005, Defendant KHOBIAN contacted the EPA representative and stated in substance that the buyer was going to tour the paper mill again and he [KHOBIAN] did not want the buyer to see EPA on site.

7. On or about September 9, 2005, Defendant on behalf of St. Regis, and a Buyer on behalf of United Fibers, entered into a joint representation agreement whereby St. Regis and United Fibers agreed that Attorney would represent both sides fairly regarding the sale of the paper mill. The purchase and sale closed in California on October 11, 2005. On that date, Buyer, on behalf of United Fibers as mortgagor, signed an $800,000 mortgage financed by St. Regis as mortgagee. The substance of the mortgage required that the mortgagor pay $50,000 per month to the mortgagee. Buyer signed the mortgage on behalf of United Fibers; Attorney notarized same. Likewise, Buyer signed two notes totaling $800,000, and Attorney notarized same. Additionally, on October 11, 2005, Buyer signed a personal guarantee for $800,000. Finally, that same day, Defendant KHOBIAN, despite EPA's prior notice and ongoing cleanup efforts, signed a letter addressed to United Fibers stating: "We hereby acknowledge that to my knowledge there are no pebs [sic], asbestos, or underground storage tanks are located on the premises. We further acknowledge that we are not under investigation, administrative order, consent order and agreement, litigation or settlement with respect to the property being sold to the United Fabrics [sic], LLC on this date." Attorney notarized said letter.

8. Prior to the October 11, 2005, closing, neither Defendant KHOBIAN, nor Attorney,

4

advised Buyer of: (i) EPA's Field Expedient Notice, (ii) Defendant KHOBIAN's statement to the EPA that he was unable to pay for the cost of cleanup, (iii) the time critical removal action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, (iv) EPA's then ongoing cleanup efforts regarding the paper mill, and (v) the potential financial liability to United Fibers as owner of the paper mill.

9. Nevertheless, Defendant KHOBIAN through Attorney demanded the $50,000 monthly mortgage payments from Buyer. Defendant failed to disclose to Buyer the numerous written EPA notices to Defendant KHOBIAN and Attorney of the paper mill's status as a "Superfund" site, and the potential liabilities to United Fibers associated with same. Attorney failed to make such disclosures to Buyer, notwithstanding his representation of United Fibers.

## The Mail Fraud Scheme

10. From in or about October 2004, the exact date being unknown, up to in or about December 2009, in the Northern District of New York, and elsewhere, Defendant JACOB KHOBIAN, with Attorney and others, with intent to defraud, devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false or fraudulent pretenses, representations and promises, to wit: the defendant with Attorney and others, defrauded a buyer whose name is known to the grand jury, by obtaining money representing mortgage payments obtained by materially false pretenses, representations and promises.

## Description of the Mail Fraud Scheme

11. It was part of the scheme and artifice that Defendant JACOB KHOBIAN, with Attorney and others, made materially false written and oral representations stating, in substance, the paper mill was not the subject of any legal or equitable or administrative action.

12.     It was further part of the scheme and artifice that defendant JACOB KHOBIAN, with Attorney and others, concealed: (i) EPA's Field Expedient Notice, (ii) Defendant KHOBIAN's statement to the EPA that he was unable to pay for the cost of cleanup, (iii) the time critical removal action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, (iv) EPA's then ongoing cleanup efforts regarding the paper mill, and (v) the potential financial liability to United Fibers as owner of the paper mill.

13.     It was further part of the scheme and artifice defendant JACOB KHOBIAN with Attorney and others, caused a person whose name is know to the grand jury to utilize the mails to, among other things, make monthly mortgage payments.

## Execution of the Mail Fraud Scheme

14.     On or about the dates listed below, in the State and Northern District of New York and elsewhere, the Defendant JACOB KHOBIAN with Attorney, and others, for the purpose of executing the aforesaid scheme and artifice and attempting to do so, knowingly placed and caused to be placed in a post office or authorized depository for mail matter, any matter or thing whatever to be sent and delivered by the Postal Service and/or by any private or commercial interstate carrier, to wit, monthly mortgage checks delivered by the United States Postal Service, from and to the entities listed below:

| Dates | From | To |
|---|---|---|
| November 15, 2005<br>December 14, 2005<br>February 10, 2006<br>April 7, 2006<br>April 30, 2006 | A buyer whose name is known to the grand jury | Defendant Jacob Khobian |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATION

6

As a result of committing the offense alleged in Count One of this Information, which is realleged and incorporated by reference as if fully set forth herein, the Defendant JACOB KHOBIAN shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 1956(c)(7), and 18 U.S.C. § 1961(1), any property, real or personal, relative to the offense of conviction, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1341, mail fraud.

The intent of the United States of America to forfeit such property includes, but is not limited to:

A.   **Money Judgment.**

A money judgment for all proceeds resulting from the above-referenced violations.

**Substitute Assets**

If the properties described above as being subject to forfeiture, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party,

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the forfeiture judgment.

                                        RICHARD S. HARTUNIAN
                                        UNITED STATES ATTORNEY
                                        NORTHERN DISTRICT OF NEW YORK

BY: _____/s/ Thomas A. Capezza_____
      Thomas A. Capezza
      Assistant United States Attorney
      Bar Roll No. 503159